UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MILA ORTIZ and MELODY THOMAS, *on behalf of themselves and others similarly situated*,<br><br>                      Plaintiffs,<br><br>v.<br><br>COAST 2 COAST LENDERS, LLC,<br><br>                      Defendant. | No.: 2:25-cv-12408-DML-DRG<br><br>Honorable District<br>Judge David M. Lawson<br><br>Honorable Magistrate Judge<br>David R. Grand |

**PLAINTIFFS' RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

# STATEMENT OF THE ISSUES PRESENTED

1. Did Plaintiffs sufficiently plead that Defendant engaged in "telephone solicitations" under the meaning of the TCPA?

   **Answer: Yes.**

2. Did Plaintiffs sufficiently plead a "National Do-Not-Call Registry" claim under 47 U.S.C. § 227(c)(5)?

   **Answer: Yes.**

3. Did Plaintiffs sufficiently plead an "Internal Do-Not-Call Registry" claim under 47 U.S.C. § 227(c)(5)?

   **Answer: Yes.**

4. Would striking class allegations at the pleading stage be premature and procedurally improper?

   **Answer: Yes.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1. *Dobronski v. CHW Group, Inc.*, No. 24-cv-11649, 2025 U.S. Dist. LEXIS 162742, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025).

2. *Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, 2021 WL 4776774 (E.D. Mich. Oct. 13, 2021).

3. *Smith v. Equrra, LLC*, No. 25-10975, 2025 U.S. Dist. LEXIS 203745 2025 WL 2941903 (E.D. Mich. Oct. 16, 2025).

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Like many people, Ms. Ortiz and Ms. Thomas ("Plaintiffs") disklike unwanted telemarketing calls. To avoid such annoyances, Ms. Ortiz and Ms. Thomas both placed their telephone numbers on the National Do-Not-Call Registry. Thus, under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, telemarketers are supposed to leave Ms. Ortiz and Ms. Thomas alone.

Unfortunately, Coast 2 Coast Lenders, LLC ("Defendant") refuses to follow the TCPA. And in May 2025, Defendant began flooding both Ms. Ortiz and Ms. Thomas with incessant telephone calls. During these calls, Defendant urges them to purchase financial services such as "mortgage refinancing." Time and again, Ms. Ortiz and Ms. Thomas ask Defendant to stop—but Defendant keeps calling. To remedy these violations of federal law, Ms. Ortiz and Ms. Thomas filed suit.

Now, Defendant moves the Court for dismissal under Rule 12(b)(6). However, throughout its brief, Defendant appears to attack a strawman, ignoring the factual allegations that establish the TCPA claims. Thus, Plaintiffs respectfully request that the Court deny the motion for three key reasons.

***First***, Plaintiffs sufficiently pleaded that Defendant engaged in telephone solicitations. ***Second,*** Plaintiffs sufficiently pleaded a National Do-Not-Call Registry claim. ***Third***, Plaintiffs sufficiently pleaded an Internal Do-Not-Call Registry claim.

1

## STATEMENT OF FACTS

Plaintiffs Thomas and Ortiz use their telephone numbers only for personal, residential, and household purposes (e.g., calling friends and family, scheduling personal appointments). *See* ECF No. 11 ("Am. Compl.") ¶¶ 19, 40. Plaintiffs never sought out Defendant nor solicited Defendant for its services. *Id*. ¶¶ 20, 41. Plaintiffs never consented to receive calls from Defendant. *Id*. ¶¶ 42. To avoid unwanted telephone solicitations, both Plaintiffs placed their telephone numbers on the National Do-Not-Call Registry. *Id*. ¶¶ 18, 39.

**Plaintiff Thomas** began receiving "repeated[] . . . calls and text messages from Defendant starting on or around May 12, 2025" where Defendant markets its "mortgage related products." *Id*. ¶¶ 21–22. Three days later, she placed her telephone number on the National Do-Not-Call Registry. *Id*. ¶ 18. Nonetheless, Ms. Thomas kept receiving "several calls per day on her telephone number from Defendant asking for someone named Joshua in Michigan." *Id*. ¶ 23. Thereafter, Ms. Thomas tried to explain that Defendant "has the wrong number[.]" *Id*. Nonetheless, Defendant keeps "trying to sell mortgage refinancing to her." *Id*.

Every time Defendant calls, Ms. Thomas tells Defendant "to stop calling." *Id*. ¶ 24. But Defendant simply ignores these requests—and keeps flooding her with unwanted telemarketing calls. *Id*. ¶¶ 23–27. For example, on May 28, 2025, Ms. Thomas received a text message from Defendant stating "Hi Joshua it's Jackie with

2

Coast 2 Coast lenders this is my direct number . . . I look forward to hearing from you soon thanks[.]" *Id*. ¶ 26. Additionally, Defendant sent a hyperlink to its website "www.c2clenders.com[.]" *Id*. In response, Ms. Thomas warned Defendant "STOP" and explained that "I have ask [*sic*] your company all day to stop calling my number you have the wrong number" and "[s]ince 8:07 am you all have called every 5 to ten minutes[.]" *Id*.

In response, Defendant implicitly acknowledged the flood of calls—and promised "[s]orry will not call back[.]" *Id*. Thereafter, "Defendant stopped texting Plaintiff Thomas, but . . . did **not stop** calling her." *Id*. ¶ 27 (emphasis added). In other words, Defendant affirmatively "confirmed [her] opt-out request" but then continued to call her anyways. *Id*. ¶¶ 28–33.

**Plaintiff Ortiz** placed her telephone number on the National Do-Not-Call Registry on December 20, 2024. *Id*. ¶ 39. Then, approximately one hundred and fifty-nine (159) days later, Ms. Ortiz nonetheless began receiving "repeated[]" calls and text messages from Defendant—wherein Defendant marketed its "mortgage related products." *Id*. ¶¶ 43–44.

Every time Defendant calls, "Plaintiff Ortiz responds that '[I am] on the DNC registry, you are not supposed to be calling me' and asks Defendant to stop contacting her." *Id*. ¶ 46. For example, on June 2, 2025, Defendant called her and "identified itself as Coast 2 Coast." *Id*. ¶ 47. Again, Ms. Ortiz asked Defendant "not

3

to call her again, just as she had in prior calls[.]" *Id*. ¶ 48. Nonetheless, Defendant has refused to honor her requests—and "Defendant has not stopped calling and texting" Ms. Ortiz. *Id*. ¶ 49.

## LEGAL STANDARD

In analyzing a 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true" and the "burden of demonstrating that the complaint fails to adequately state a claim falls on the defendant." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (quoting *Taylor v City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019)).

## ARGUMENT

**I.  Plaintiffs Sufficiently Pleaded that Defendant Engaged in Telephone Solicitations.**

    **A.  Plaintiffs sufficiently pleaded that Defendant is responsible for the telemarketing calls.**

Plaintiffs sufficiently pleaded that Defendant is responsible for the telemarketing calls. *See* Am. Compl. ¶¶ 17–57. For example, in *Dobronski v. CHW Group, Inc*., the plaintiff sufficiently pleaded that the telemarketing calls were attributable to the defendant because "the callers identified themselves as 'with' or 'from' [the defendant]." No. 24-cv-11649, 2025 U.S. Dist. LEXIS 162742, at *8 (E.D. Mich. Aug. 21, 2025). There, the defendant argued that such allegations were "insufficient . . . for not providing enough factual matter to establish that the calls

4

came from [defendant]." *Id*. at *8–9. This Court rejected that argument, explaining that "[j]udges in this District and elsewhere have found that, at the pleading stage, it is sufficient that a caller self-identify as a representative of the defendant to infer that the defendant is responsible for the calls." *Id*. at *9–10 (collecting cases).

This Court further explained that "[i]f a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA" and that "[f]acts alleged in a complaint need not be detailed, and a plaintiff need not prove his case at this stage." *Id*. (citing *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007)).

Courts have consistently held that such allegations suffice to state a plausible claim of direct TCPA liability. *See e.g. Smith v. American-Amicable Life Insurance Co. of Texas*, No. 22-333, 2022 U.S. Dist. LEXIS 62115, at *2 (E.D. Pa. Apr. 4, 2022) (finding that allegations that plaintiff was told he was "speaking with [defendant]" and offered insurance benefits were sufficient); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action[.]"); *Chinitz v. Intero Real Estate Services*, No. 18-cv-05623, 2021 U.S. Dist. LEXIS 70436, at *16 (N.D. Cal. Apr. 12, 2021) (holding that allegations that sales associates

identified the defendant's real estate company during telemarketing calls supported a plausible inference of direct liability). These decisions confirm that Plaintiff's well-pled factual allegations more than clear the Rule 12(b)(6) plausibility threshold.

Here, Defendant argues that the complaint fails to allege "that Coast 2 Coast made any call."[1] *See* PageID.62. But like the plaintiff in *CHW Group*, Ms. Thomas received a text message[2] where the caller self-identified as being "**with** Coast 2 Coast lenders[.]" Am. Compl. ¶ 26 (emphasis added). Additionally, Defendant sent Ms. Thomas a hyperlink to its website "www.c2clenders.com[.]" *Id*. Finally, Ms. Ortiz also received calls where "the caller identified itself as Coast 2 Coast." *Id*. ¶ 47. Thus, under *CHW Group*, Plaintiffs sufficiently pleaded that Defendant is responsible for the telemarketing calls.

### B. The telemarketing calls qualify as telephone solicitations under the TCPA.

Plaintiffs sufficiently pleaded that Defendant placed telephone solicitations—which the TCPA defines as the "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods,

---

[1] Defendant cites the inapplicable statute 47 U.S.C. § 227(b)(1)(A)(iii). *See* PageID.62. However, Plaintiffs did not bring a claim under § 227(b). *See* Am. Compl. ¶¶ 1–85. Rather, Plaintiffs brought claims under § 227(c)(5). *Id*. ¶¶ 77–85.

[2] In the Sixth Circuit, text messages are "calls" under the TCPA. *Dobronski v. 1-800-Law-Firm, PLLC*, No. 2:24-cv-12512, 2025 U.S. Dist. LEXIS 91963, at *11 (E.D. Mich. Apr. 17, 2025) (citing *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015)).

or services[.]" 47 U.S.C. § 227(a)(4). For example, in *Delgado v. Emortgage Funding, LLC*, the plaintiff alleged telemarketing calls where "the caller solicited mortgage services[.]" No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *8 (E.D. Mich. Oct. 13, 2021). There, the Court concluded that plaintiff "sufficiently alleged that . . . defendant or its agent(s) initiated telephone solicitations[.]" *Id*. at *12.

Here, Plaintiffs satisfy both *Emortgage Funding* and the plain text of 47 U.S.C. § 227(a)(4). After all, Plaintiffs alleged "calls and text messages" that Defendant "initiated for purposes of marketing [its] mortgage related products." Am. Compl. ¶¶ 21–22, 44–45. And like *Emortgage Funding*, Defendant encouraged Plaintiffs to purchase "mortgage refinances" services. *Id*. ¶¶ 23, 45. Moreover, Defendant even provided a hyperlink to its website "www.c2clenders.com" and stated "it's Jackie with Coast 2 Coast lenders this is my direct number . . . I look forward to hearing from you soon[.]" *Id*. ¶ 26. These allegations are sufficient, and dismissal is improper.

## II.  Plaintiffs Sufficiently Pleaded a National Do-Not-Call Registry Claim.

Plaintiffs sufficiently pleaded a National Do-Not-Call Registry claim—which requires "more than one telephone call within any 12-month period" when the telephone number has been on the National Do-Not-Call Registry. *CHW Group*, 2025 U.S. Dist. LEXIS 162742, at *5. However, the TCPA regulations provide a "grace period" of thirty-one (31) days. *See* 47 C.F.R. § 64.1200(c)(2)(i)(D). For

example, in *CHW Group*, the telephone numbers were placed on the National Do Not Call Registry in 2022. *See* 2025 U.S. Dist. LEXIS 162742, at *2. But over the following years, the telephone numbers still received telephone solicitations from the defendant. *Id*. at *3. Based on those allegations, the Court denied the motion to dismiss in its entirety. *Id*. at *22.

Here, Ms. Thomas placed her telephone number on the National Do-Not-Call Registry on May 15, 2025. *See* Am. Compl. ¶ 18. At this time, Ms. Thomas was receiving "repeated[] . . . calls and text messages from Defendant[.]" *Id*. ¶¶ 21–22. Thirteen (13) days later, Ms. Thomas received another text message from Defendant. *Id*. ¶ 26. Critically, after that text message, Ms. Thomas **continued** to receive calls (i.e., "After Plaintiff texted STOP . . . Defendant did not stop calling her"). *Id*. ¶¶ 27–30. At this early stage, these allegations are sufficient to establish that Ms. Thomas plausibly received calls after the thirty-one day "grace period."

More importantly—and like the plaintiff in *CHW Group*—Ms. Ortiz received "repeated" calls **months after** she placed her telephone number on the National Do-Not-Call Registry. *Id*. ¶¶ 43, 45. Specifically, Ms. Ortiz placed her telephone number on the National Do-Not-Call Registry on December 20, 2024. *Id*. ¶ 39. Then, a full one hundred and fifty-nine (159) days later, Ms. Ortiz began to "repeatedly receive[] calls and text messages from Defendant[.]" *Id*. ¶ 43. On this point, Defendant argues that Ms. Ortiz "identifies only one call[.]" PageID.65. However, Ms. Ortiz has

8

alleged "repeated" calls and that she "receives several texts and calls per day[.]" Am. Comp. ¶¶ 43, 45.

In sum, Plaintiffs exceeded their pleading burden by alleging numerous telephone solicitations from Defendant after the thirty-one day "grace period." Thus, dismissal is improper under *CHW Group*.

**III.   Plaintiffs Sufficiently Pleaded an Internal Do-Not-Call Registry Claim.**

Plaintiffs sufficiently pleaded an Internal Do-Not-Call Registry claim because Defendant "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made" and the "period may not exceed ten (10) business days from the receipt of such request." *See* 47 C.F.R. § 64.1200(d)(3). Because of the "may not exceed" language, solicitation after ten (10) business days are *per se* violations. *See Smith v. Equrra, LLC*, No. 25-10975, 2025 U.S. Dist. LEXIS 203745, at *4 (E.D. Mich. Oct. 16, 2025). However, solicitations within the ten (10) day window may still be "unreasonable" and thus TCPA violations. *Id*. And critically, the reasonableness of solicitations within the ten (10) day window "cannot be determined from the pleadings alone." *Id*.

Previously, 47 C.F.R. § 64.1200(d)(3) provided a "30 day" limit. *Id*. at *4. However, the regulation was amended—and as of April 11, 2025, the regulation provides a shorter limit of "10 business days[.]" *See Hulett v. Eyebuydirect, Inc.,* No. 1:24-cv-996, 2025 U.S. Dist. LEXIS 112645, at *5 n.4 (N.D.N.Y. June 13, 2025)

9

("[T]he Court is aware that the Federal Communications Commission has recently amended § 64.1200(d)(3) to provide that a period of delay may not exceed 10 business days, rather than 30 days . . . [which] went into effect on April 11, 2025."). Here, the updated "10 business day" limit applies because Ms. Thomas and Ms. Ortiz began receiving telephone solicitations in May 2025 (i.e., the month after the update went into effect). *See* Am. Compl. ¶¶ 21, 43.

For example, in *Emortgage Funding*, the plaintiff received calls "over the four-day period immediately following her request that the calls stop." 2021 U.S. Dist. LEXIS 196785, at *13. While such calls were before the window expired, the Court denied dismissal—explaining that it "cannot determine the reasonableness of this delay on the pleadings alone." *Id*.

Similarly, in *Smith*, the plaintiff alleged one solicitation within the window, and two solicitations after the window expired. 2025 U.S. Dist. LEXIS 203745, at *4. There, the Court denied dismissal, explaining that "the reasonableness of the delay cannot be determined based solely on the pleadings . . . the court finds that [plaintiff] plausibly alleged that the delay was unreasonable." *Id*. The Court further explained that the solicitations "sent after the . . . period expired" were *per se* unreasonable. *Id*.

Here, Ms. Ortiz began receiving telephone solicitations from Defendant on or around May 28, 2025. *Id*. ¶ 43. And "[e]ach time Defendant called her, Plaintiff

10

Ortiz responds that '[I am] on the DNC registry, you are not supposed to be calling me' and asks Defendant to stop contacting her." *Id*. ¶ 46. Since then, "Defendant has not stopped calling and texting [her]." *Id*. ¶ 49. Like *Emortgage Funding*, these allegations are sufficient to establish that the continued solicitations were "unreasonable" at the pleading stage.

Ms. Thomas sufficiently pleaded an Internal Do-Not-Call Registry claim—and she began receiving telephone solicitations from Defendant on or around May 12, 2025. *Id*. ¶ 21. And "[e]very time" she received a call, Ms. Thomas "instructed Defendant to stop calling." *Id*. ¶ 24. Then, on May 28, 2025, Ms. Thomas received a text message solicitation from Defendant. *Id*. ¶ 26. Excluding all weekends, and the federal holiday on May 26, 2025, the period between the two solicitations was eleven (11) business days. *Id*. Moreover, even after eleven days, Ms. Thomas continued to receive further solicitations. *Id*. ¶ 27 ("Defendant did not stop calling her."). Thus, like *Smith*, these continued solicitations are *per se* unreasonable.

In response, Defendant appears to attack a strawman, arguing that "both plaintiffs fail to allege even one call made after a do-not-call request[.]" *See* PageID.67. But as explained above, such arguments ignore the pleadings. *See* Am. Compl. ¶¶ 18–57. And under *Emortgage Funding* and *Smith*, Plaintiffs sufficiently pleaded an Internal Do-Not-Call Registry claim, including numerous *per se* violations. Dismissal is improper.

11

## IV. Striking Class Allegations at the Pleading Stage Is Premature.

Courts are clear that a "motion to strike plaintiff's class allegations . . . is premature." *Emortgage Funding*, 2021 U.S. Dist. LEXIS 196785, at *13 (denying motion to strike class allegations). And while plaintiffs "must meet Rule 23's various requirements in order to be certified, the parties have yet to reach this stage in the litigation." *Id*. At the pleading stage, courts simply "lack[] the information necessary to conduct a rigorous analysis under Rule 23." *Id*. Thus, the "court should defer decision on certification pending discovery[.]" *Nichols v. Accretive Capital LLC*, No. 23-10473, 2023 U.S. Dist. LEXIS 197111, at *10 (E.D. Mich. Nov. 2, 2023) (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996)).

Indeed, only several months ago, Judge Ludington denied a substantively identical motion in the TCPA case *Hubble v. LoanDepot.Com, LLC*, No. 1:24-cv-11173, 2025 U.S. Dist. LEXIS 186864 (E.D. Mich. Sep. 23, 2025). There, Judge Ludington held that "pre-discovery motions to strike class allegations are disfavored. Such motions are granted only in the narrow circumstance where it is impossible to certify the defined class, regardless of what facts might emerge in discovery." *Id*. at *5. Judge Ludington further explained that, in TCPA cases, "factual development could alter the certification analysis, which counsels heavily against striking [] class allegations at the pleading stage." *Id*. at *9 (internal quotation omitted).

Like *Emortgage Funding* and *LoanDepot*, granting Defendant's motion to

12

strike class allegation before the parties engage in discovery would be "premature." 2021 U.S. Dist. LEXIS 196785, at *13. After all, Courts recognize that TCPA class actions readily satisfy the requirements of Rule 23. *See, e.g., Kimble v. First Am. Home Warranty Corp. & Fivestrata LLC*, No. 23-10037, 2024 U.S. Dist. LEXIS 118951, at *10, 29 (E.D. Mich. July 8, 2024) (granting final approval and noting that "courts frequently find that TCPA actions raise common issues for class consideration").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Date: January 20, 2026

*/s/ Cassandra P. Miller*
Cassandra P. Miller
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
cmiller@straussborrelli.com
raina@straussborrelli.com

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 617-485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I caused a copy of the foregoing motion, along with all supporting papers, to be filed with the Court's CM/ECF system, which will serve copies on all counsel of record.

Date: January 20, 2026

*/s/ Cassandra P. Miller*
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
Fax: 872-263-1109
cmiller@straussborrelli.com